[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16682

_____

D.C. Docket No. 04-60917 CV-WPD

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 22, 2006
THOMAS K. KAHN
CLERK

RAFAEL CASTRO,

Plaintiff-Appellant,

versus

SECRETARY OF HOMELAND SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 22, 2006)**

Before EDMONDSON, Chief Judge, BARKETT and COX, Circuit Judges.

PER CURIAM:

In this appeal, we consider whether the Plaintiff, a disabled applicant for a transportation security screening position can sue the Department of Homeland Security (DHS) for violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791,

794. We conclude that he cannot because the Aviation and Transportation Security Act, 49 U.S.C. § 44935, (ATSA) exempts the Transportation Security Administration from certain requirements of the Rehabilitation Act with regard to employment of security screeners.

## I. BACKGROUND

In August 2002, Rafael Castro applied for employment with the Transportation Security Administration (TSA) as a Lead Transportation Security Screener. TSA declined to hire Castro because he failed the required medical assessment. Castro has a history of physiologic non-epileptic seizures that TSA's staff physician determined disqualified him for employment as a security screener. Castro responded by suing the DHS, the department responsible for TSA, for violation of the Rehabilitation Act, alleging that TSA had discriminated against him on the basis of his disability.

DHS moved to dismiss Castro's action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. DHS argued that Castro could not bring a claim against DHS pursuant to the Rehabilitation Act because, following the terrorist attacks of September 11, 2001, Congress passed the ATSA, which mandated that qualification standards for transportation security screeners be established by TSA, notwithstanding any other

2

provision of law.  Therefore, DHS argued, TSA was not bound by the requirements of the Rehabilitation Act in its employment of security screeners. DHS also argued that Castro's action must be dismissed because Castro had failed to exhaust all administrative remedies before filing suit.

The district court granted DHS's motion, holding that "Congress has exempted the job qualifications utilized by [TSA] from review under the Rehabilitation Act[.]"  (R.1-21 at 2.)  Because it dismissed Castro's action on that ground, the district court found it unnecessary to address DHS's argument that Castro had not exhausted all administrative remedies.

## II.  ISSUE ON APPEAL & CONTENTIONS OF THE PARTIES

Castro appeals the dismissal, arguing that the ATSA should not be read to relieve DHS of any of its obligations under the Rehabilitation Act, as the two statutes are not in irreconcilable conflict.  Alternatively, Castro contends that, if the ATSA exempts DHS/TSA from compliance with the Rehabilitation Act at all, that exemption is only applicable as to the establishment of hiring criteria for security screeners and that his action does not challenge those hiring criteria. Thus, he contends that dismissal of his action was improper.

DHS argues that, by using the language "notwithstanding any provision of law" in the ATSA, Congress set aside the requirements of the Rehabilitation Act

3

in authorizing TSA to establish and apply physical performance standards for the hiring of security screeners. DHS also argues that, because the Rehabilitation Act does not extend to cases like Castro's, where an applicant for a security screening position is denied employment on the basis of TSA's hiring standards, the district court properly dismissed Castro's lawsuit.

## III. STANDARD OF REVIEW

"We review *de novo* the district court's grant of a motion to dismiss under [Rule] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). "A motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)) (other citations omitted).

## IV. DISCUSSION

Castro's complaint alleges that DHS violated sections 791 and 794 of the Rehabilitation Act. Those sections require federal agencies to implement affirmative action plans for the hiring of individuals with disabilities and forbid

4

agencies from refusing to hire otherwise qualified applicants solely because of their disabilities. *See* 29 U.S.C. §§ 791(b), 794(a). The parties agree that, unless the ATSA provides an exception for TSA's hiring of security screeners, the Rehabilitation Act forbids TSA from refusing to hire Castro based upon his history of seizures alone.

Following the terrorist attacks of September 11, 2001, Congress passed the ATSA to affect "fundamental change in the way" the United States "approaches the task of ensuring the safety and security of the civil air transportation system." H.R. Conf. Rep. No. 107-296 at 53. One of the changes made was the creation of a workforce of federal employees to screen passengers and cargo at commercial airports. With regard to hiring qualifications of security screeners, the ATSA states:

> [T]he Under Secretary shall establish qualification standards for individuals to be hired by the United States as security screening personnel. Notwithstanding any provision of law, those standards shall require, at a minimum, an individual–
> . . . .
> > (iii) to meet, at a minimum, the requirements set forth in subsection (f);
> > (iv) to meet such other qualifications as the Under Secretary may establish; and
> > (v) to have the ability to demonstrate daily a fitness for duty without any impairment due

5

> to illegal drugs, sleep deprivation,
> medication, or alcohol.

49 U.S.C. § 44935(e)(2)(A). Subsection (f) referenced above requires that screeners have a high school diploma, an equivalency diploma, or experience sufficient to perform screener duties; that screeners "possess basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, and motor skills" as specified in the subsection; and that screeners be able to read, speak, and write English. 49 U.S.C. § 44935(f). Public Law 107-71, Title I, § 111(d), 115 Stat. 620, codified as a note to 49 U.S.C. § 44935, states:

> Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for . . . individuals . . . to carry out the screening functions
> . . . .

Thus, the question before us is whether the district court properly held that the language of the ATSA exempts TSA from compliance with the Rehabilitation Act in establishing employment standards for security screeners. We conclude that it did.

The plain language of the ATSA indicates that TSA need not take the requirements of the Rehabilitation Act into account when formulating hiring

6

standards for screeners. Congress directed TSA to establish hiring criteria (including physical standards at least as strenuous as those in subsection (f)) for security screeners "[n]otwithstanding any provision of law." 49 U.S.C. § 44935(e)(2)(iii), (iv). And it stated that TSA has authority, "[n]otwithstanding any other provision of law," to "employ, appoint, . . . and fix the . . . terms, and conditions of employment" for security screeners. 49 U.S.C. §44935 note.

We read the phrase "notwithstanding any other provision of law" as Congress's indication that the statute containing that language is "intended . . . to take precedence over any preexisting or subsequently-enacted . . . legislation [on the same subject]." *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995); *see also Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S. Ct. 1898, 1903 (1993) (commenting favorably upon interpretations by Courts of Appeals of similar "notwithstanding" language "to supersede all other laws" and quoting, "a clearer statement is difficult to imagine.") (citations omitted). Thus, the "notwithstanding" language of section 44935(e) and the note to the statute indicate that TSA shall implement hiring standards and conditions of employment (including physical standards) for screening personnel, whether or not those

7

standards and conditions of employment are consistent with the Rehabilitation Act.[1]

While we find the plain language of the statute sufficient to reach our conclusion, we also note that subsection (f) of the ATSA explicitly requires TSA to promulgate hiring standards that are inconsistent with the Rehabilitation Act's prohibition against making hiring decisions based on physical disabilities. *See* 49 U.S.C. § 44935(f). That section lists physical abilities that must be incorporated into TSA's hiring criteria for security screeners. The existence of subsection (f)'s requirements supports our conclusion that Congress intended to exempt TSA from the contrary requirements of the Rehabilitation Act with respect to its hiring of security screeners.

Castro also argues that, even if the ATSA allows TSA to promulgate hiring standards for security screeners that do not comply with the Rehabilitation Act, his action was erroneously dismissed because he does not challenge those hiring standards. We see no merit in this argument. Castro's lawsuit seeks to hold TSA responsible for violating the Rehabilitation Act by refusing him employment on the basis of his physical disability. Because Castro was denied employment as a

---

[1]We need not decide in this case whether the TSA must comply with other federal statutes that involve the agency's employment decisions. Castro's complaint implicates only those provisions of the Rehabilitation Act cited in this opinion.

result of a TSA determination that he was ineligible for employment as a security screener due to his disability, Castro's suit challenges TSA's authority to promulgate and implement hiring standards inconsistent with the Rehabilitation Act.

We hold that, in the ATSA, Congress instructed TSA to develop hiring standards for security screeners, without regard to restraints the Rehabilitation Act may have imposed.[2] Thus, an unsuccessful applicant (like Castro) who alleges that TSA discriminated against him on the basis of disability when it denied his application for employment as a security screener cannot state a claim against TSA based on violation of the Rehabilitation Act.[3] Castro's action was properly dismissed for failure to state a claim upon which relief can be granted.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

[2]The Court of Appeals for the District of Columbia has reached a similar conclusion in finding, "[T]he '[n]otwithstanding *any other provision of law*' language renders inapplicable general federal statutes that otherwise would apply to the Under Secretary's power to 'employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service' for screener positions." *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382 (D.C. Cir. 2004) (citing 49 U.S.C. § 44935 note).

[3]Castro contends that the ATSA cannot be read to repeal the Rehabilitation Act broadly. He may or may not be correct in this assertion, but that question is not before us. DHS does not argue for broad repeal of the Rehabilitation Act, and Castro's lawsuit implicates only those portions of the ATSA and Rehabilitation Act cited above. Therefore, we need not decide the broader question.