[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10853

Non-Argument Calendar

_____

JENNIFER COVEL,

Plaintiff-Appellant,

*versus*

COMMUNITY PHYSICIANS OF NORTH PORT, P.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-02021-MSS-MRM

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Jennifer Covel, proceeding *pro se*, appeals the district court's order dismissing her complaint alleging retaliation by her former employer, Community Physicians of North Port, P.A. ("CPNP") in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a).

Ms. Covel asserts that she successfully pled all elements of an ADA retaliation claim. She also argues that the district court erred in concluding that her belief in the illegality of CPNP's workplace COVID-19 policy was objectively unreasonable for three reasons. First, she contends—with respect to the promulgated standard for ADA retaliation claims—that the objective reasonableness of her belief is not the correct standard for pro se litigants. Second, she maintains that CPNP's policy was unreasonable because courts have not unanimously upheld mask mandates. Third, she argues that her belief in the policy's illegality was objectively reasonable because the policy directly contravened the ADA's prohibition on mandatory medical exams and inquiries.

Because we find no merit in Ms. Covel's arguments, we affirm the district court's order of dismissal. We address each argument below.

## I*

During the height of the global COVID-19 ("Covid") pandemic in June of 2020, one of CPNP's doctors, Dr. Juan Masi, tested positive for Covid and caused the office to close for a week. Soon thereafter, CPNP adopted a mask policy requiring its office staff to wear masks, test for Covid, quarantine where necessary, take their temperature, and disclose their temperature and test results. The policy applied to all employees at CPNP. Under this policy, employees were categorized as being either "masked" or "unmasked."

Ms. Covel worked at CPNP as a medical billing assistant and often assisted the front desk with certain tasks. Upon implementation of the Covid mask policy, Ms. Covel refused to wear a mask because she felt CPNP's policy regarded her—as an employee—as disabled. Ms. Covel alleged that CPNP wrongfully imposed the policy on all employees without conducting "individualized medical assessments" of each employee's health. She further alleged there was no statute in effect at the time that authorized the policy. To Ms. Covel, compliance with CPNP's policy was voluntary.

On July 22, 2020, Dr. Masi observed Ms. Covel working in the office without a mask. He warned her that she was required to mask and that failure to do so put her at risk of being terminated from her position. Ms. Covel explained she had a condition that

---

* Because this is an appeal from a Rule 12(b)(c) dismissal, we accept as true the factual allegations in Ms. Covel's operative complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

prevented her from complying with the mask policy. A few weeks later, she offered to work from home as an alternative to complying with the mask policy. In response, CPNP agreed to provide certain accommodations that would allow Ms. Covel to continue working in the office without having to wear a mask.

In September of 2020, Ms. Covel called in sick and was asked to quarantine for a period pursuant to the policy. When she returned to the office on September 21, 2020, Ms. Covel found that CPNP had implemented certain accommodations for her to continue working while unmasked. Specifically, CPNP moved Ms. Covel's desk and work area from the main area of the office to an isolated portion of the office.  CPNP also altered Ms. Covel's work responsibilities such that she was no longer tasked with assisting in the front office or delivering inter-office mail.

Ms. Covel alleged that CPNP made an announcement to its entire office disclosing these accommodations and portraying her as a direct threat to her coworkers. Ms. Covel further alleged that, in response to her objection to the mask policy and CPNP's accommodations, CPNP publicly listed her job position on Zip Recruiter, a job recruitment site; refused to allow her to work overtime, weekend shifts, or cover shifts for other co-workers; and refused her access to a career-building seminar.

On November 13, 2020, Ms. Covel met with Dr. Masi and asked for help correcting what she felt had become a hostile work environment. During the meeting Ms. Covel told Dr. Masi that she was aware of CPNP's plans to terminate her because of the job posting

on Zip Recruiter. She explained how she could no longer supplement her income by working weekends and overtime as she had done in the past, and how she felt her opportunities for advancement were adversely affected because of the accommodations she received.

On December 6, 2020, Ms. Covel filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Two days later, Ms. Covel resigned from her position at CPNP.

## II

In May of 2021, Ms. Covel received her right to sue letter from the EEOC. She filed suit in August of 2021, alleging that CPNP, by way of its Covid mask policy, regarded her as disabled and retaliated against her.

Ms. Covel amended her complaint, asserting claims for intentional discrimination, retaliation, and constructive termination under the ADA. The district court granted in part CPNP's motion to dismiss Ms. Covel's first amended complaint, dismissing with prejudice her ADA discrimination and constructive termination charges, and dismissing without prejudice her retaliation claim.

Ms. Covel then filed a second amended complaint, alleging retaliation under the ADA. CPNP moved to dismiss the retaliation claim. CPNP argued that Ms. Covel failed to allege a specific disability, as well as the form of protected activity she engaged in with respect to requirements for establishing a prima facie case of retaliation under the ADA.

Ms. Covel responded to CPNP's motion to dismiss, stating she was proceeding under the "regarded as" disabled prong under the ADA. In her response, Ms. Covel argued that she had sufficiently pled this prong because CPNP's masking policy assumed all employees suddenly acquired the same disability—the possibility of becoming infected with Covid. She further asserted that her belief in the policy's unlawfulness was reasonable because the policy violated EEOC regulations providing a right to be free from medical examinations or disability-related injuries. Finally, Ms. Covel maintained that but-for causation was satisfied because she would not have objected to the policy had it not existed.

The district court granted CPNP's motion to dismiss on the ground that Ms. Covel failed to allege that she had a good faith basis for believing that CPNP's Covid mask policy was unlawful. Ms. Covel timely appealed.

## III

We review de novo a district court's order granting a motion to dismiss for failure to state a claim under Rule 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *See Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006). To survive a motion to dismiss for failure to state a claim, a complaint need plead only enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 560–64. "A claim is facially plausible when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged

misconduct." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). Pleadings by pro se litigants like Ms. Covel are liberally construed. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

## IV

On appeal, Ms. Covel argues that she successfully pled all elements of her claim for retaliation under the ADA. We disagree.

The ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). We apply the same standard to retaliation claims brought under Title VII of the Civil Rights Act of 1964 and those brought under the ADA. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). A plaintiff may establish a prima facie case of retaliation by showing she (1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *See id.* Once a plaintiff establishes a prima facie case, "the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation." *Id.* If the employer does this, the burden then shifts back to the plaintiff to establish "that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id.*

Under the first prong of the retaliation analysis, a plaintiff must demonstrate that he or she engaged in statutorily protected activity. For expression to be statutorily protected, "[a] plaintiff

must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Importantly, "[w]here binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer . . . an employee's contrary belief that the practice is unlawful is unreasonable." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2009).

Ms. Covel first argues that whether her belief in the policy's unlawfulness was objectively reasonable is not the correct inquiry because she is a *pro se* litigant. But the well-settled standard for an ADA retaliation claim "has both a subjective and objective component." *Little*, 103 F.3d at 960 (explaining that it is "not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable"). And though we read *pro se* filings liberally, we do not change or alter substantive legal standards for *pro se* litigants.

Ms. Covel next asserts that her refusal to wear a mask pursuant to CPNP's policy constitutes protected activity because she believed the policy was illegal. She challenges the legality of the policy on two grounds: first, CPNP's Covid mask policy was unreasonable because courts have not unanimously upheld mask

mandates, and second, that the policy violated the ADA's prohibition on mandatory medical examinations and inquiries.

First, Ms. Covel relies on two cases to assert the policy was unlawful, but they are inapposite. *See Health Freedom Def. Fund v. Biden*, 599 F. Supp. 3d 1144 (M.D. Fla. 2022), *vacated on mootness grounds*, 71 F. 4th 888 (11th Cir. 2023); *NFIB v. OSHA*, 595 U.S. 109 (2022). Both cases concerned the authority of government agencies to enact mandatory mask or vaccine mandates; they did not call into question the ability of private employers to decide voluntarily whether to require masks or vaccination for their employees. In *Health Freedom Defense Fund,* the plaintiffs sued various government officials and the CDC seeking a declaratory judgment that the federal mask mandate that required travelers to wear a mask on public transportation and several other public areas was unlawful. *See Health Freedom Def. Fund*, 599 F. Supp. 3d at 1153 (striking down the CDC mask mandate on public transportation as violating the Administrative Procedure Act). Similarly, in *NFIB*, the Secretary of Labor, acting through the Occupational Safety and Health Administration ("OSHA"), imposed a Covid vaccine mandate on the country's workforce, making it mandatory for employers with more than 100 employees to require employees to either vaccinate or submit to weekly Covid testing and wear masks in the workplace. *NFIB*, 595 U.S. at 112–113 (striking down OSHA's mask and vaccine mandates as exceeding OSHA's authority).

Unlike the defendants in *Health Freedom Defense Fund* and *NFIB*, CPNP is a private company which implemented a Covid

mask policy. Generally, an employer does not need statutory authorization to make employment decisions. *Cf. Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020) (en banc) (noting in a Title VII case that the "[r]ole of the court is to prevent unlawful Title VII practices, not to act as a super personnel department that second-guesses employers' business judgments"). CPNP's office mask policy did not require statutory or judicial authorization, nor was it illegal because governmental mask and vaccine mandates were struck down. And we know of no federal law or Florida law that prohibited private employers from requiring that their employees wear masks during the Covid pandemic.

Second, Ms. Covel argues that the policy violated the ADA's prohibition on mandatory medical examinations and inquiries. The ADA prohibits an employer from requiring mandatory medical examinations and inquiries into an employee's disability status "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). But requiring an employee like Ms. Covel to wear a mask is neither a medical examination nor an inquiry related to a non-existent disability.

We note, as well, that Ms. Covel has not alleged a legally cognizable disability that would trigger the prohibition on inquiries into an employee's disability status. Though Ms. Covel mentions having a condition that prevented her from wearing a mask, she does not assert that condition as her relevant disability. She instead maintains that she is proceeding under the "regarded as" disabled

prong of the ADA. But that is not a legally cognizable disability. Regarding employees as at risk of imminently contracting a contagious disease does not meet the statutory definition of disability. *See EEOC v. STME, LLC*, 938 F.3d 1305, 1315–16 (11th Cir. 2019) (holding that a person is not regarded as impaired within the meaning of the ADA just because the employer believes they are at imminent risk of contracting an infectious disease, because the statutory language requires the employer to see the person as presently impaired, not merely at risk of future impairment). Thus, Ms. Covel has not asserted a disability sufficient to trigger the ADA's prohibition against inquiries into an employee's disability status.

## V

Because mask mandates by private employers like CPNP are not prohibited by federal law or Florida law, and because CPNP's mask requirement did not constitute a medical examination or inquiry, Ms. Covel failed to sufficiently allege a good faith and objectively reasonable belief that CPNP's policy was unlawful under the ADA. Consequently, Ms. Covel did not adequately plead her claim of retaliation under the ADA. We affirm the district court's dismissal for failure to state a claim.

**AFFIRMED.**